IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  Case No. 3:22cr304-TES-CWB |
| | ) |
| DERRICK DEMOND BOONE | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending for resolution is a Motion to Suppress filed on behalf of Derrick Demond Boone. (Doc. 14). Upon consideration of the evidence and arguments of record, the undersigned Magistrate Judge recommends that the Motion to Suppress be denied.

**I.   Procedural History**

Boone is under indictment for Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1 at pp. 1-2). On March 10, 2023, Boone filed a Motion to Suppress directed at "alleged statements given during a non-Mirandized interrogation" and "any physical or other evidence obtained by law enforcement as a direct result of said non-Mirandized statements." (Doc. 14 at p. 1). The Government in turn filed a written opposition on April 3, 2023, accompanied by various evidentiary exhibits. (Docs. 22 & 23).

A hearing was held before the Magistrate Judge on April 6, 2023. (Docs. 24 & 25). The Government presented live testimony from Lorenzo Dennis (Dougherty County Sheriff's Office), Edwin Reece (Phenix City Police Department), Donnie Surrett (United States Marshal Service), and Cassandra Bryan (Phenix City Police Department). The Government also offered the same exhibits that were previously submitted with its written opposition, all of which were admitted into evidence without objection as follows:

- Exhibit 1 – Report by Cassandra Bryan;

1

- Exhibit 2 –  Report by Donnie Surrett;

- Exhibit 3 –  Report by Michael Russell;

- Exhibit 4 –  Lease Agreement;

- Exhibit 5 –  Bodycam footage; and

- Exhibit 6 –  Waiver of Rights executed by Derrick Boone.

(Doc. 24-1 through Doc. 24-9).  Boone then presented live testimony from Lee Anne Brantley (Investigator, Office of the Federal Defender) and offered the following two evidentiary exhibits that were admitted into evidence without objection:

- Exhibit 1 –  Cellphone video taken by Brittany Moses; and

- Exhibit 2 –  Report by Cassandra Bryan.

(Doc. 24-10 & Doc. 24-11).  Counsel for the parties thereafter were permitted to present their respective oral arguments, and the issues were taken under advisement.

## II.    Facts[1]

On November 16, 2021, a Collateral Lead Request was issued to seek assistance in locating and apprehending Boone on outstanding felony warrants for parole violation, probation violation, and terroristic threats—all out of Albany, Georgia.  According to the request, Boone was believed to be living with Brittany Moses at an apartment complex in Phenix City, Alabama.  Records confirmed that the lease to the subject apartment was held in Moses's name, and surveillance had shown Boone coming and going from the apartment.

Prior to the planned attempt to arrest Boone, a briefing was held among the officers slated to be involved.  The testimony presented at the suppression hearing established that the topics of

---

[1] To the extent testimony at the April 6, 2023 suppression hearing conflicted on certain points, or conflicted with the evidentiary exhibits, the facts stated herein reflect the court's findings as to the credible facts relevant to this Recommendation.

discussion included Boone's outstanding warrants and history of domestic violence, along with the potential that Boone might be in possession of a firearm (based upon a photograph located on social media[2]) and that minor children might be present. When the officers arrived at the apartment between 6:00 a.m. and 7:00 a.m. on November 17, 2021, they engaged in a five-minute knock and announce protocol without response. The officers then entered the apartment utilizing a key obtained from building management. Once inside, the officers located Boone and Moses within a bathroom. The apartment was promptly cleared without any other occupants being discovered.

Boone was placed into handcuffs and separated from Moses, who was also placed into handcuffs. According to Officer Dennis, Moses stated that she had not opened the door for officers because Boone would not allow her to do so. Officer Dennis testified that Moses expressed her fear of Boone and stated that Boone had a gun—as she gestured toward a bedroom dresser. Officer Dennis further testified that Moses consented to a search for the gun and thereafter was released from restraints and taken into the main living area of the apartment.[3]

Boone at some point was returned into the apartment from the exterior breezeway where he had been detained. The testimony at the suppression hearing reflected that Boone observed officers searching for the gun and alerted them to its location inside the bedroom dresser. The testimony further established that Boone also made statements to the effect that the gun was his and that he did not want Moses to get in trouble. It is undisputed that Boone had not been Mirandized at the time of such actions and statements. However, the testimony was that Boone

---

[2] The photograph was not offered as evidence at the suppression hearing, and it is unknown when the photograph was taken.

[3] It appears from the testimony that approximately 9 officers participated in the on-site events of November 17, 2021. Of those, approximately 4-5 officers were involved in the interior aspects, and the remainder acted on the exterior to secure points of ingress and egress. Only 2 officers were present when Moses was interviewed and provided consent for the search.

volunteered the information without being prompted. After the gun was located, Boone was Mirandized and made additional statements about how he had acquired the gun. Boone later was formally interviewed at the Phenix City Police Department after executing a *Miranda* waiver.

By all accounts, both Boone and Moses were cooperative during the encounter (other than their refusal to open the door in response to knock and announce). No evidence was presented to suggest that either Boone or Moses objected to the search or asked that the search be stopped. Nor was any evidence presented that either Boone or Moses was in any way threatened by the involved officers.

The primary point of disagreement concerns whether Moses actually gave consent for a search. Counsel for Boone presented live testimony from Lee Ann Brantley, who is an investigator employed by the Office of the Federal Defender, regarding two conversations that she allegedly had with Moses about the underlying events. The first of those conversations occurred on March 1, 2023, at which time Moses allegedly denied that she had provided consent for the search. The second occurred on March 14, 2023, at which time Moses again allegedly denied having provided consent. The court also notes that only Officer Dennis testified to having heard Moses consent to the search, and there is no executed written consent, audio/video confirmation of consent, or reference to consent in several of the reporting documents.

**III.    Discussion**

Boone contends that the gun upon which his current criminal charge is based was located "as a direct result of [an] illegal interrogation." (Doc. 14 at p. 1). According to Boone, "law enforcement questioned him about the presence of any weapons in the residence" and he "directed officers to a bedroom dresser where a firearm was located in a closed dresser drawer." (*Id.*).

Pursuant to *Miranda v. Arizona*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). It therefore is axiomatic that *Miranda* warnings generally "must precede any custodial interrogation." *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir. 1994) (internal quotation marks and citation omitted). Because arrest warrants were executed and Boone was placed into handcuffs upon first contact with the involved officers, there can be no dispute here as to whether Boone was in custody for *Miranda* purposes. Nor is there any dispute that Boone was not Mirandized until <u>after</u> the gun was located.

### A.    Boone's alleged statements

The Motion to Suppress asserts that Boone alerted officers to the gun in response to custodial questioning as to "[w]hether there were any items in the apartment of which law enforcement needed to be aware." (Doc. 14 at pp. 1-2). The credible evidence presented at the suppression hearing, however, established that officers actually learned of the gun from Moses and that Boone merely corroborated the gun's location through a voluntary statement. Nonetheless, based upon the surrounding circumstances, any information arguably gleaned through custodial interrogation would remain admissible under the "public safety exception" to *Miranda*.

The "public safety exception" was first espoused by the United States Supreme Court in *New York v. Quarles*, 467 U.S. 649 (1984). There, two officers were approached by a female claiming to have been raped and stating that the perpetrator had gone into a nearby supermarket. 467 U.S. at 651-52. After a brief chase, the perpetrator was apprehended, frisked, and found to be wearing an empty gun holster. *Id*. at 652. One of the officers asked where the gun was located, the perpetrator told the officer its location, and the gun was retrieved. *Id*. Under those

circumstances, the Supreme Court concluded that finding the gun was a matter of public safety such that the formality of *Miranda* was excused:

> The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.
>
> In such a situation, if the police are required to recite the familiar Miranda warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost. Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

*Id*. at 657.

The Eleventh Circuit has made clear that the "public safety exception" also applies where the chief concern is officer safety. In *United States v. Ochoa*, for example, the defendant was arrested outside his home after a robbery and shooting. 941 F.3d 1074, 1080-81 (11th Cir. 2019). The arresting officers asked if anyone else was inside the residence and if there was anything dangerous inside the residence—to which the defendant responded that there was a firearm. *Id*. at 1081. The defendant later moved to suppress the statement and firearm because he was not Mirandized prior to questioning. *Id*. at 1083-84. On appeal, the Eleventh Circuit explained that "[the] public safety exception allows law enforcement officers to question a suspect without first informing him of his *Miranda* rights when they reasonably believe doing so is necessary to protect

6

either the officers or the public." *Id*. at 1096-97.  Under the facts presented, the court found *Miranda* unnecessary because the inquiring officer reasonably believed "he or his team members could be in danger upon entering the residence." *Id*. at 1098.

The *Ochoa* decision relied upon the Eleventh Circuit's earlier decision in *United States v. Newsome*, 475 F.3d 1221 (11th Cir. 2007).  The defendant in *Newsome* was a known violent offender who was arrested inside a motel room. *Id*. at 1222-23.  Suspecting that another person was in the room, the arresting officers asked the defendant if there was anyone or anything in the room they should know about. *Id*. at 1223.  The defendant then stated that he had a gun in a drawer. *Id*.  Observing that "[t]he public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public," the court held that the exception applied due to the officers' reasonable belief that they were in danger. *Id*. at 1224-25.  Because the questioning arose from "a very rapid sequence of events," the court rejected the argument that all danger had been effectively "neutralized" once the defendant was placed into restraints. *Id*.

The "public safety exception" applies with equal force here.  The officers who testified at the suppression hearing consistently acknowledged that they had been briefed in advance as to Boone's history of violent conduct (especially toward women) and potential possession of a firearm.  And upon their arrival at the apartment, officers indeed discovered a female (Moses) who appeared fearful of Boone.  Under such circumstances, the "public safety exception" would have permitted the officers detaining Boone to inquire about the presence of any weapons that might pose a risk to safety.[4]  Moreover, given the reasonable belief that Boone possessed a gun, any such

---

[4] The undersigned again notes that no evidence was presented at the suppression hearing to demonstrate that Boone was in fact subjected to questioning about the gun before being issued *Miranda* warnings.  The reference to custodial interrogation in the Motion to Suppress appears to

questioning likewise would have been justified as a means to protect the safety of other residents or visitors, including Moses's two minor children, against later coming upon it. *Quarles*, 467 U.S. 657

To summarize, insufficient evidence has been presented to establish that Boone was subjected to any type of interrogation prior to being administered *Miranda*, *i.e.*, the undersigned finds the credible evidence to establish that Boone volunteered the location of the gun (accompanied by an explanation that Moses should not be held responsible for it). But even had Boone's statements been procured through a pre-*Miranda* interrogation, questioning about the gun would have been permissible under the "public safety exception." The undersigned thus concludes that the Motion to Suppress is due to be denied as to any pre-*Miranda* statements made by Boone regarding the presence, location, and/or ownership of the gun found inside the apartment.

**B.     Seizure of the Gun**

   **i.     Consent to the search**

Contrary to Boone's assertion in his Motion to Suppress, the evidence presented does not support a finding that the gun was located as the result of any pre-*Miranda* statement given to the involved officers. Sworn testimony from Officer Dennis instead reflected that it was Moses who brought the presence of the gun to the attention of officers. According to his testimony,

---

be based upon an entry in the report prepared by Officer Bryan. (Doc. 24-1 at p. 2; Doc. 24-11 at p. 1). Because Officer Bryan was not at the scene of the events, her report contained only secondhand information. The undersigned thus finds the sworn testimony given by the involved officers to provide a more credible account of the sequence of events. As to any pre-*Miranda* statements whereby Boone claimed ownership of the gun or asked that Moses not get in trouble for the gun, the undersigned finds the credible testimony to establish that such statements were unprompted, spontaneous utterances not made in response to interrogation. *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) ("Voluntary and spontaneous comments by an accused, even after *Miranda* rights are asserted, are admissible evidence if the comments were not made in response to government questioning").

Officer Dennis asked Moses why she had not opened the apartment door and was informed it was because she was afraid of Boone. When Officer Dennis inquired why she was afraid, Moses stated it was because Boone had a gun. According to Officer Dennis, Moses pointed in the direction of a bedroom dresser while making the statement and granted consent for the officers to conduct a search.[5]

As the leaseholder, Moses possessed authority to grant the involved officers consent to search the apartment—even if Boone also had a privacy interest therein. *See United States v. Matlock*, 415 U.S. 164, 171 (1974) (holding that it "may be shown that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected"). Stated differently, officers were not required to seek separate consent from Boone. *See, e.g., United States v. Morales*, 893 F.3d 1360, 1370 (11th Cir. 2018) ("Despite Morales' assertions, the officers didn't have a duty to ask him whether he objected to the search … ."). Nor is there evidence that Boone at any point protested the search or demanded that it be ceased. In fact, the evidence reflects that Boone corroborated the presence of the gun and directed officers to its location. *See id.* at 1370 ("Had Morales objected to the

---

[5] The undersigned acknowledges that the cellphone video taken by Moses captured officers asking why she failed to open the apartment door but does not contain any statements about a gun or any consent to a search. The undersigned further has considered that several of the official reports lack reference to consent having been provided by Moses. That being said, the cellphone video (less than 3 minutes in length) clearly does not contain the entirety of interaction between Moses and the involved officers. The undersigned finds credible the sworn testimony given by Officer Dennis that Moses referenced the presence of a gun and provided verbal consent for a search. Although Investigator Brantley testified that Moses later denied having provided such consent, there is no way for the undersigned to evaluate precisely what questions were posed to Moses in that regard, and any responses given by Moses on the issue of consent (unlike the testimony of Officer Dennis) were not under oath. The undersigned additionally finds the totality of the evidence sufficient to establish that Moses's consent was voluntary. Moses was described as being cooperative at all times, and there is no indication that her consent to a search was the result of any type of coercive police procedure.

search, it might be different. … But he didn't.  And his failure to do so rests on him.") (citations omitted); *compare Georgia v. Randolph*, 547 U.S. 103, 121 (2006).  Because the gun was discovered as the result of an authorized search, there is no basis for it to be suppressed.[6]

### ii. Search without consent

Assuming *arguendo* that Moses did not provide voluntary consent for the search, suppression of evidence regarding the gun still would not be warranted.  For the reasons addressed, the undersigned has found the surrounding circumstances sufficient to support application of the "public safety exception" to Boone's alleged statements about the gun.  "Because there was no Fifth Amendment violation, the evidence obtained from the search [may be] properly admitted." *Newsome*, 475 F.3d at 1226 ("[B]oth 'a defendant's statement—and the physical evidence recovered as a result of that statement—may be admitted into evidence at trial.'") (quoting *United States v. Estrada,* 430 F.3d 606, 610 (2d Cir. 2005) (citation omitted)).  And even if alleged questioning about the gun fell outside the ambit of the "public safety exception," it is clear that that "*Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (citing *United States v. Patane*, 542 U.S. 630 (2004));

---

[6] The evidence presented at the suppression hearing reflects the following sequence of events: (1) Moses acknowledged the presence of a gun inside the bedroom and granted consent for a search; (2) Boone had not yet made any statements about the gun; (3) officers began the process of searching for the gun; (4) Boone was brought inside the room and stated that the gun was in a dresser drawer; and (5) officers located the gun. "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984).  So too is evidence admissible when it "would inevitably have been discovered without reference to the police error or misconduct." *Id*. at 448.  *See also United States v. Delancy*, 805 F.3d 1297, 1314-15 (11th Cir. 2007) The totality of the evidence presented at the suppression herein demonstrates that the officers' knowledge about the gun came from a source independent of Boone and also that, even if Boone's corroborating statements were excluded, the in-progress search would inevitably have led to the gun's discovery.  Either finding would render evidence of the gun admissible.

*United States v. Robinson*, 760 F. A'ppx 762, 764 (11th Cir. 2019) ("While statements made in violation of *Miranda* must generally be suppressed, failure to give *Miranda* warnings does not require suppression of physical fruits of a suspect's unwarned but voluntary statements."); *see also United States v. Clark*, No. 3:18-cr-408-RAH-JTA, 2020 WL 6864545, *5 (M.D. Ala. Sept. 4, 2020) ("Thus, unwarned statements made absent *Miranda* cannot be admitted into evidence at trial but physical evidence discovered from unwarned statements does not suffer the same fate.").[7]

## IV.  Conclusion

Accordingly, the undersigned Magistrate Judge hereby **RECOMMENDS** that the Motion to Suppress (Doc. 14) be **DENIED**.

Any party may file written objections to this Recommendation.  Such objections must be filed with the Clerk of Court by **May 4, 2023**, must identify every objectionable finding or recommendation, and must state the specific basis for every objection being asserted.  An objecting party also must identify any issue that the Recommendation has not addressed.  Frivolous, conclusive, or general objections will not be considered.

After receiving all objections, the District Judge will conduct a *de novo* review of the findings, recommendations, or omissions to which objection is made.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed

---

[7] No evidence has been presented that Boone's statements were involuntary for purposes of the Fifth Amendment, and the undersigned finds the totality of evidence to demonstrate that the statements were not coerced. *See, e.g., United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession.") (quotation marks and citation omitted).

to have waived the right to challenge on appeal the District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 20th day of April 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**